property, but also the cars, engines and other rolling stock, and all descriptions of personal property owned by the railroad company, or to be thereafter acquired. The road and its equipments constituted the complete and entire thing which was covered by the mortgage. The road, on the one hand, and the equipments on the other, were useless unless held and used together. One of the purposes to be accomplished in the appointment of a receiver, was the preservation of the mortgaged property. This could only be done by repairing the track, and replacing the engines and cars when required. Money expended for either of these purposes becomes incorporated into the corpus of the mortgaged property. Money expended in repairing or rebuilding a bridge, and money expended in repairing a locomotive or replacing one that had been destroyed or worn out, both stand on the same footing. Such expenditures are necessary to the preservation of the mortgaged property, and enter into its corpus. The claim of the petitioners is, that after the road passed into the hands of the receiver, all its income and profits become their property by an absolute title, and, therefore, that the engines and other property purchased with such income and profits, vests in them, and do not become a part of the mortgaged property.

What are the creditors entitled to out of the income and profits of the railroad in the hands of a receiver? Clearly, only to the surplus after paying the expenses of conducting the business of the railroad, and preserving the property and keeping it in working condition. The receiver has the power, and it is his duty, even without an order of the court, to apply so much of the income of the property as may be necessary to its care and preservation. He could do this in spite of the mortgagees. But in this case, where the order of the court directed him to use the road and carry on its business, and keep it in repair, there can be no question as to his right and duty. All outlays made by him in good faith, in the ordinary course of the business of the road, with a view to advance and promote its interest, and to render it profitable and successful, may be allowed in passing his accounts. Such outlay may include, not only the keeping the road and its buildings and rolling stock in repair, but also providing such additional accommodations and stock as the necessities of the business may demand. Cowdrey v. Railroad Co. [Case No. 3,293]. If the receiver has the right to do these things, to use the earnings in repairs and replacements of the road and its equipment, how can it be said that the mortgagees are entitled to the gross income? Can they demand that no money shall be expended in repairs? If they cannot, it is because they are not entitled to such part of the income as is necessary to keep the property in repair. They are entitled to the net income. That portion of the receipts which is expended in carrying on the business of the road, and in the preservation of the property, is not income. The income and profits is the surplus after all expenses and repairs and necessary replacements have been made. The mortgagees are entitled to that surplus, and nothing more. These bondholders might as well claim that a bridge rebuilt by the receiver did not pass by the sale, as to claim that engines and cars put upon the road, and necessary to keep up its equipment and do its business, did not pass. Money so expended is no more income and profit than money paid to engineers and brakemen for their services. There is no consideration which would justify the court in holding that the purchasers of the mortgaged property have not acquired title to the rolling stock bought by the receiver. It was as much a part of the mortgaged property as the iron rails put on the track by him. It enhanced the value of the property. The railroad brought a larger sum at the sale, by reason of the fact that this rolling stock had been placed upon it. The mortgagees have received the benefit of this property in the increased price which the railroad brought at the sale. They cannot keep the price of the property and claim the property too.

In accordance with these views, I must hold that the purchaser is entitled to the engines, cars and other personal property referred to in the petition, and that so much of the prayer of the petition as asks that the purchasers be required to deliver up said property, in order that it may be sold again, must be denied.

---

STRANGE (KELLY v.). See Case No. 7,676.

---

## Case No. 13,524.

### STRANGE v. REDFIELD.

[Cited in Hutton v. Schell, Case No. 6,961. Nowhere reported; opinion not now accessible.]

---

## Case No. 13,525.

### The STRANGER.

[1 Brown, Adm. 281;[1] 3 Chi. Leg. News, 217; 4 Am. Law T. Rep. (U. S. Cts.) 161; 13 Int. Rev. Rec. 150.]

District Court, E. D. Michigan. March, 1871.

TUG-BOATS—THEIR LIABILITIES AND DUTIES—PRACTICE IN ADMIRALTY.

1. Tugs, though not liable as common carriers, are bound to the exercise of ordinary skill and diligence in taking up, arranging and managing their tows.

2. It is also the duty of vessels in tow to use all possible means to avoid injury, and where injury ensues, to do all in their power to make the damages as light as possible.

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]